IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DEAN MAURO, Individually and on
behalf of all others similarly situated,

       Plaintiff,   Civil Action No.
            5:17-CV-1397 (TJM/DEP)

   v.

ELECTROLUX HOME PRODUCTS,
INC., and LOWE'S HOME
CENTERS, LLC.,

       Defendants.

_____

APPEARANCES:     OF COUNSEL:

FOR PLAINTIFF:

SALTZ, MONGELUZZI, BARRETT  SIMON B. PARIS, ESQ.
& BENDESKY, P.C.      PATRICK HOWARD, ESQ.
120 Gibraltar Road      CHARLES J. KOCHER, ESQ.
Suite 218
Horsham, PA 19044

HAGENS BERMAN SOBOL   ANTHONY D. SHAPIRO, ESQ.
SHAPIRO LLP       JENIPHR BRECKENRIDGE, ESQ.
1918 8th Avenue       JASON ZWEIG, ESQ.
Suite 3300
Seattle, WA 98101

FOR DEFENDANTS:

K&L GATES LLP       PATRICK J. PERRONE, ESQ.
One Newark Center, Tenth Floor  LOLY G. TOR, ESQ.
Newark, NJ 07052

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

<u>DECISION AND ORDER</u>

Rule 1 of the Federal Rules of Civil Procedure provides, in pertinent part, that the Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Against this backdrop, the court is called upon to determine whether defendants Electrolux Home Products, Inc. ("Electrolux"), and Lowe's Home Centers, LLC ("Lowe's"), (collectively "defendants"), should be forced to defend against substantially similar putative class actions brought by plaintiff Dean Mauro ("Mauro") in this court, and against nearly identical actions brought by plaintiffs, represented by the same counsel that have appeared for Mauro, in other jurisdictions, all involving allegations that certain over-the-range microwaves manufactured by Electrolux and sold by defendant Lowe's and other retailers are defective and expose users to a substantial risk of serious injury.

Having carefully considered the matter, I find that because the actions are sufficiently similar, it would be wasteful and inefficient, and thus in violation of Rule 1, to have the cases litigated in separate forums. Accordingly, I conclude that this case should be transferred to the Middle

District of Pennsylvania, where the other related suits are now pending.

I.      BACKGROUND

A.      Electrolux

Defendant Electrolux is a Delaware Corporation with its principal place of business located in Charlotte, North Carolina. Dkt. No. 2 at 5. Electrolux manufactures and distributes products under a variety of brand names, including Electrolux, Electrolux ICON, Frigidaire Professional, Frigidaire Gallery, Frigidaire, Eureka, Kelvinator, Sanitaire, Tappan, and White-Westinghouse. *Id.* Among the retailers that sell Electrolux products is Lowe's, a North Carolina limited liability corporation with its principal place of business located in Wilkesboro, North Carolina. *Id.*

B.      The Product

Among products sold by Electrolux are over-the-range microwave ovens designed for installation on a vertical wall directly above the cooking surface of a range. Dkt. No. 2 at 2. At issue in this case are stainless steel handles mounted on certain of those microwaves. *Id.* According to plaintiff's complaint, when the cooking surface below the microwave is in operation, its stainless steel handle heats to excessive temperatures, rendering it unfit for use with the bare hand and exposing the user to substantial risk of injury through touching the handle. *Id.*

3

Plaintiff Mauro, a resident of Syracuse, New York, purchased a Frigidaire Gallery over-the-range microwave oven manufactured by Electrolux from a Lowe's store located in Cicero, New York, in December 2014. Dkt. No. 2 at 4. Mauro asserts that the stainless steel handle of his microwave, which was properly installed pursuant to defendants' installation instructions, reaches excessive surface temperatures when the range below is operating, rendering the handle unreasonably dangerous and unfit for use. *Id.* at 5.

C.    This Action

Plaintiff commenced this action in New York State Supreme Court, Onondaga County, on November 20, 2017. *See generally* Dkt. No. 2. The action was subsequently removed to this court by defendants on the basis of diversity of citizenship, pursuant to 28 U.S.C. § 1332, on December 30, 2017. Dkt. No. 1. Named as defendants in plaintiff's complaint are Electrolux and Lowe's. *Id.* Plaintiff's complaint asserts seven separate causes of action, including (1) a claim under N.Y. General Business Law §§ 349, 350 against Electrolux, alleging that defendant's commission of deceptive acts and practices, including through false and misleading misrepresentations or omissions of material facts in connection with marketing, promotion and sale of its microwaves with defective handles;

4

(2) negligence against Electrolux; (3) strict liability, design defect, and failure to warn against both defendants; (4) negligent failure to warn against Electrolux; (5) violation of the Magnuson-Moss Consumer Products Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, against Lowe's; (6) breach of implied warranty of merchantability against Lowe's; and (7) unjust enrichment against both defendants. Dkt. No. 2 at 15-24. Defendants' time to answer the complaint has been stayed indefinitely pending a ruling on the transfer motion now before the court, and the pretrial conference that was to have been held in the action, pursuant to Rule 16 of the Federal Rules of Civil Procedure, was adjourned without date. Dkt. No. 17.

D.     The *Rice* Action

On February 18, 2015, represented by the same attorneys that now appear for plaintiff Mauro in this action, Elaine Rice commenced a similar putative class action against Electrolux in the United States District for the Middle District of Pennsylvania. *See Rice v. Electrolux Home Prods., Inc.*, No. 4:15-CV-00371 (M.D. Pa., filed 2015) (the "*Rice* Action"); *see also* Dkt. No. 15-2 at 3. As with Mauro in this case, Rice asserted that certain over-the-range microwave ovens marketed by Electrolux contain stainless steel handles that can reach temperatures in excess of 168°F when the cooking

surface below is in operation and that, as a result of the alleged defect, plaintiff suffered physical and economic damages and a continued exposure to further risk. Dkt. No. 15-5 at 8. In her complaint in that action, plaintiff Rice asserted eight causes of action, including (1) a request for declaratory relief; (2) strict liability – design defect and failure to warn on behalf of a declaratory relief class; (3) negligent failure to warn; (4) violation of the MMWA; (5) breach of the implied warranty of merchantability; (6) breach of express warranty; (7) unjust enrichment; and (8) strict liability – design defect and failure to warn. *Id.* at 20-37.

In her complaint, plaintiff Rice has sought to represent the following two putative classes: (1) a Rule 23(b)(2) "Injunctive/Declaratory Relief Class," to include of "[a]ll persons in the United States who own a Microwave with a stainless steel handle (Part # 5304471830)[;]" and (2) a Rule 23(b)(3) Pennsylvania sub-class consisting of "[a]ll persons in the Commonwealth of Pennsylvania who own a Microwave with a stainless steel handle (Part # 5304471830) purchased during the four (4) years preceding the filing of this action." Dkt. No. 15-5 at 16-17. In addition, her complaint also requested certification of an "other states" class, described as follows:

>All persons in the States of Alaska, Arkansas,
>California, Colorado, Delaware, District of Columbia,
>Hawaii, Indiana, Kansas, Louisiana, Maine,
>Massachusetts, Maryland, Michigan, Minnesota,
>Mississippi, Missouri, Montana, Nebraska, Nevada,
>New Hampshire, New Jersey, New Mexico, New
>York, North Dakota, Oklahoma, Rhode Island,
>South Carolina, South Dakota, Texas, Utah,
>Virginia, Washington, West Virginia, and Wyoming
>who own a Microwave with a stainless steel handle
>(Part # 5304471830) purchased during the four (4)
>years preceding the filing of this action.

*Id.* at 16. In a memorandum decision dated July 28, 2015, District Judge

Matthew W. Brann granted Electrolux's motion to strike the "other states"

subclass on the ground that Rice lacked standing to represent the

subclass of which she was not a member. Dkt. No 15-6 at 23-25. An order

memorializing that decision was entered the same day. Dkt. No. 15-7. The

*Rice* Action remains pending and, as will be discussed more below, has

been joined with another similar matter brought by co-plaintiff Alex Kukich

in another district but transferred to the Middle District of Pennsylvania.

Class certification in the *Rice* Action has not yet been sought, and on

February 20, 2018, District Judge Brann ruled on a recent motion brought

by Electrolux seeking partial dismissal of the plaintiff's amended complaint

in that suit. *Rice* Action, Dkt. No. 125.

E.    The *Kukich* Action

On October 11, 2016, Alex Kukich filed a similar putative class action against Electrolux in the United States Court for the District of Maryland. *Kukich v. Electrolux Home Prods., Inc.*, Civil Action No. ELH-16-3512 (D. Md., filed 2016) (the "*Kukich* Action"); *see also* Dkt. No. 15-2 at 6. In the *Kukich* Action, the plaintiff, who is also represented by the attorneys that now appear for Mauro, has sought to represent two putative classes, including (1) a Rule 23(b)(2) "injunctive/declaratory relief class" consisting of "all persons in the United States who own a microwave with a 400 Grade Stainless Steel Handle," and (2) a Rule 23(b)(3) "Maryland Class" consisting of all persons from Maryland owning a microwave with the defective steel handle that was purchased during the four years preceding the filing of the action. Dkt. No. 15-2 at 6-7. Plaintiff's complaint in the *Kukich* Action asserted virtually identical claims to those raised in the *Rice* Action and in this suit, with variations relating to the state-specific claims. *Id.* at 7.

On November 10, 2016, Electrolux filed a motion to transfer the *Kukich* Action to the Middle District of Pennsylvania, where the *Rice* Action was pending. Dkt. No. 15-8. By memorandum opinion issued on January 24, 2017, United States District Judge Ellen Lipton Hollander ordered that

the Maryland action be transferred to the Middle District of Pennsylvania

on the basis that, although it would be more convenient for Kukich if the

action remained in Maryland, the balance of the relevant factors, including

the pendency of the *Rice* action in the Middle District of Pennsylvania,

weighed heavily in favor of a transfer. Dkt. No. 15-2 at 7; Dkt. No. 15-11 at

26; *see also Kukich v. Electrolux Home Prods., Inc.*, Civil Action No. ELH-

16-3412, 2017 WL 345856 (D. Md. Jan. 24, 2017). The *Kukich* Action was

later consolidated with the *Rice* Action, and on March 24, 2017, an

amended complaint was filed to reflect the joinder. Dkt. No. 15-2 at 8-9;

*see also* Dkt. No. 15-13.

  F. The *Mendoza/Hunt* Action

   Erika Mendoza and James Hunt, who are similarly represented by

the attorneys that have appeared for the plaintiff in this action,

commenced a putative class action suit against Electrolux on May 19,

2017, in California state court (the "*Mendoza/Hunt* Action"). Dkt. No. 15-2

at 9; Dkt. No. 15-15. In that action, the plaintiffs raised substantially the

same allegations and asserted many of the same claims as those set forth

in the *Rice* Action and in this suit, as well as claims arising under

California state law. *See generally id.* On June 22, 2017, Electrolux

removed the action to the United States District Court for the Eastern

District of California. Dkt. No. 15-2 at 9; Dkt. No. 15-16. By order dated November 2, 2017, United States Magistrate Judge Sheila K. Oberto granted Electrolux's motion to transfer the action to the Middle District of Pennsylvania because the interests of convenience and justice weighed in favor of a transfer. Dkt. No. 15-2 at 10; *see* Dkt. No. 15-17 at 3, 21. Following the transfer, the plaintiffs filed an amended complaint in which, *inter alia*, they added defendants, including Lowe's. Dkt. No. 15-2 at 12; *see* Dkt. No. 15-18. A motion brought by Electrolux on January 12, 2018 seeking dismissal of the amended complaint in the *Mendoza/Hunt* Action remains pending, but is now fully briefed and awaiting a decision from District Judge Brann.

II.    PROCEDURAL HISTORY

On January 17, 2018, shortly after commencement of this action and its removal to this court, defendants filed a motion seeking a transfer of this action to the Middle District of Pennsylvania, where the consolidated *Rice/Kukich* and *Mendoza/Hunt* Actions are pending. Dkt. No. 15. Plaintiff responded in opposition to the motion on February 12, 2018. Dkt. No. 34. Oral argument was heard in connection with motion on February 28, 2018, at which time decision was reserved.

III.   <u>DISCUSSION</u>

A.   <u>Motion to Transfer Venue Standard</u>

Plaintiff's motion to transfer venue is brought pursuant to 28 U.S.C. §

1404(a). That section provides, in relevant part, as follows:

> (a) for the convenience of parties and witnesses, in
> the interest of justice, a district court may transfer
> any civil action to any other district or division
> where it might have been brought or to any district
> or division to which all parties have consented.

28 U.S.C. § 1404(a); *see Gottlieb v. U.S. Sec. & Exch. Comm'n*, 16-3663,

2018 WL 507172, at *1 (2d Cir. Jan. 23, 2018) (summary order) (quoting

28 U.S.C. § 1404(a)). "The purpose of section 1404(a) is to prevent the

waste of time, energy, and money and to protect litigants, witnesses and

the public against unnecessary inconvenience and expense." *Flaherty v.*

*All Hampton Limousine, Inc.*, 01 Civ 9939, 2002 WL 1891212, at *1

(S.D.N.Y. Aug. 16, 2002) (internal quotation marks omitted) (quoting

*Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 94

(S.D.N.Y. 1995)); *see also Van Dusen v. Barrack*, 376 U.S. 612, 616

(1964). The decision of whether to grant a requested transfer under

section 1404(a) is addressed to the sound discretion of the court. *Nelson*

*A. Taylor Co., Inc. v. Tech. Dynamics Grp. Inc.*, No. 95-CV-0431, 1997 WL

176325 (N.D.N.Y. Apr. 7, 1997) (Pooler, J.) (citing *Minnette v. Time*

*Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993)).

In this circuit, the decision of whether to grant a requested transfer

under section 1404 is informed by several relevant factors, including

> (1) the plaintiff's choice of forum, (2) the
> convenience of witnesses, (3) the location of
> relevant documents and relative ease of access to
> sources of proof, (4) the convenience of parties, (5)
> the locus of operative facts, (6) the availability of
> process to compel the attendance of unwilling
> witnesses, [and] (7) the relative means of the
> parties.

*D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006)

(alteration in original); *see also N.Y. Marine & Gen. Ins. Co. v. Lafarge N.*

*Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010); *Wagner v. N.Y. Marriot*

*Marquis*, 502 F. Supp. 2d 312, 314 (N.D.N.Y. 2007) (Mordue, J.).

A party seeking a transfer under section 1404(a) bears the "burden

of making out a strong case for a transfer." *Filmline Prods., Inc. v. United*

*Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989). Although the Second

Circuit has

> never explicitly approved a district court's use of the
> 'clear and convincing evidence' standard in ruling on
> a motion to transfer venue . . . [i]t is . . . appropriate
> that the district courts in [this] Circuit have
> consistently applied the clear and convincing
> evidence standard in determining whether to
> exercise discretion to grant a transfer motion.

*N.Y. Marine*, 599 F.3d at 113-14. Thus, the court should not "disturb a

plaintiff's choice of forum 'unless [the d]efendants make a clear and convincing showing that the balance of convenience favors [their] choice.'" *View 360 Solutions, LLP v. Google, Inc.*, 1:12-CV-1352, 2013 WL 998379, at *1 (N.D.N.Y. Mar. 13, 2013) (Dancks, M.J.), *aff'd* 2013 WL 12130430 (N.D.N.Y. Aug. 13, 2013) (Suddaby, C.J.).

    B.   <u>Application</u>

       1.   <u>Jurisdiction and Venue in the Transferee Court</u>

As a threshold matter, the court must first determine whether this action could have been filed in the proposed transferee forum, the Middle District of Pennsylvania. To demonstrate that an action "might have been brought" to the requested transferee venue, "the moving party must establish that (a) venue is proper in the transferee venue; and (b) the transferee venue had personal jurisdiction over the defendant on the date the action was commenced." *View 360*, 2013 WL 998379 at *2 (citing *Anglo Am. Ins. Grp., P.L.C. v. CalFed Inc.*, 916 F. Supp. 1324, 1330 (S.D.N.Y. 1996)).

The relevant venue statute provides that

> [a] civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events . . . giving rise to the claim occurred . . . ; or (3) if there is no district in which an action may

> otherwise be brought . . . any judicial district in
> which any defendant is subject to the court's
> personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Under Pennsylvania law, general personal jurisdiction exists "over a business if the business qualifies as a foreign corporation in the state." *Bors v. Johnson & Johnson*, 208 F. Supp. 3d 648, 652 (E.D. Pa. 2016) (citing *Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991)). Electrolux is registered as a foreign corporation in Pennsylvania. Dkt. No. 15-2 at 2; Dkt. No. 15-3. As such, personal jurisdiction exists over defendant Electrolux in the Middle District of Pennsylvania, and venue in that district properly lies. *See Kukich*, 2017 WL 345856, at *3-7 (finding that Electrolux submitted to the general jurisdiction of the Pennsylvania courts by registering as a foreign corporation, was subject to suit in Pennsylvania, and therefore, that the case could have been brought in the Middle District of Pennsylvania).

Defendant Lowe's is also a registered foreign limited liability company in Pennsylvania. Dkt. No. 15-1 at 17; Dkt. No. 15-4. As such, personal jurisdiction also exists over defendant Lowe's in the Middle District of Pennsylvania. Accordingly, as asserted by defendants, this action could have been brought in the Middle District of Pennsylvania. Dkt. No. 15-1 at 17.

2.  Convenience Factors

Because this case "might have been brought" in the proposed transferee district, the determination of whether this case should be transferred to the Middle District of Pennsylvania will turn on the balance of the convenience and interest of justice factors.

a.  Convenience of Witnesses

"Convenience of both party and non-party 'witnesses is probably the single-most important factor in the analysis of whether transfer should be granted.'" *In re Bennett Funding Grp., Inc.*, 259 B.R. 243, 249 (N.D.N.Y. 2001) (Kahn, J.) (quoting *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 657 (S.D.N.Y. 1998)). An evaluation of this factor typically involves weighing the materiality of testimony witnesses may provide, the number of witnesses, and where those witnesses are located. *See View 360*, 2013 WL 12130430, at *5.

In their motion papers, defendants do not identify any specific fact witnesses that might be inconvenienced by litigation in two jurisdictions. Instead, they generally argue that the parties' experts, whose reports the parties have already exchanged, would need to travel to two different jurisdictions for depositions, and that all witnesses would also need to attend hearings and trials in two different locations. Dkt. No. 15-1 at 24.

Defendants explain that in order for the pending actions to be more efficient, less expensive, and result in consistent outcomes, this factor should weigh in favor of a transfer. *Id.* at 22-23. Plaintiff attacks defendants' failure to provide the court with an affidavit regarding this factor, but similarly fails to identify any specific witnesses who would be inconvenienced by a change in venue in this action.[1] Dkt. No. 34 at 10.

In the *Kukich* Action, neither party provided the court with any specific witnesses that would have been inconvenienced by a transfer. Dkt. No. 15-11 at 17. Accordingly, the court there determined this factor to be neutral. *Id.* Similarly, in the *Mendoza/Hunt* Action, the court articulated that neither party identified any witness they sought to depose or call at trial that would be inconvenienced by a transfer, concluding, "like Judge Hollander in *Kukich* . . . this factor is neutral, weighing neither in favor of nor against transfer." Dkt. No. 15-17 at 13 (citing *Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1215-16 (S.D. Cal. 2013) ("Defendants have not identified any potential witnesses by name or described their testimony. While the Court agrees the majority of witnesses are located in

---

[1]     At oral argument on February 28, 2018, plaintiff intimated that he might depose a fact witness from the local Lowe's store. Although the court is skeptical that the unidentified employee could provide information that is relevant to plaintiff's design defect claims, the court further notes that "the convenience of witnesses who are employees of a party is entitled to less weight because that party can obtain their presence at trial." *Kukich*, 2017 WL 345856, at *9 (internal quotation marks omitted).

New Jersey, Defendants fail to specifically name or describe their testimony. These components appear to offset, and the Court finds this factor is neutral."); *Wilson v. Conair Corp.*, Civ. No. 1:14-894 WBS BAM, 2014 WL 4249514, at *5 (E.D. Cal. Aug. 27, 2014)). Like the judges in those actions, I find that neither party has identified a specific witness that transfer would inconvenience, and this factor is therefore deemed neutral.

b.   Location of Relevant Documents

While a factor to be considered, the location of relevant documents "is entitled to relatively little weight in the modern era of faxing, scanning, and emailing documents." *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 30 (S.D.N.Y. 2016); *see Bennett v. Sterling Planet, Inc.*, 2010 WL 11566003, at *6 (N.D.N.Y. Mar. 22, 2010) (Homer, M.J.). Plaintiff contends that this factor weighs against transfer on the basis that his microwave was purchased and installed in New York, and that all documentary evidence related to the purchase and installation is located here. Dkt. No. 34 at 13. Plaintiff further contends that there are no relevant documents located in the Middle District of Pennsylvania, and that all defendants' witnesses have been deposed in North Carolina and plaintiff Rice was deposed in Philadelphia, Pennsylvania. *Id.* at 13-14.

Although there may be a modest number of marginally relevant

documents and some other physical evidence located in this district, many relevant documents are located elsewhere.[2]  Many documents have already been produced by Electrolux to plaintiff's counsel in the substantially similar actions pending in the Middle District of Pennsylvania. Dkt. No. 15-17 at 14. In any event, with the ease of access to documents, regardless of their location, this court gives little weight to this factor. *See id.* (the *Mendoza/Hunt* court deemed this factor neutral due to the ease of transporting documents and plaintiff's counsel's previous receipt of the relevant documents in the Middle District of Pennsylvania).

### c.   Convenience and Means of the Parties

When addressing the factor of convenience and means of the parties, it is insufficient for a moving party to show that transfer would

---

[2]     Defendants have represented that they intend to inspect plaintiff's microwave and conduct his deposition in this district. Plaintiff's counsel suggested during oral argument that it might be necessary for a jury to physically inspect the microwave in plaintiff's home. There is nothing before the court, however, to suggest that the microwave cannot be transported to the court for trial. *Cf. Reynolds v. Xerox Educational Servs., LLC*, No. 13cv1003 (HB), 2013 WL 5303797, at *2 (S.D.N.Y. Sept. 20, 2013) (concluding that, because key, physical evidence could not be transported, the factor weighed in favor of transfer to the district where the evidence was located). In addition, the mere possibility of a jury view is not ordinarily a factor that should be considered. *Ward v. Stewart*, 133 F. Supp. 3d 455, 465 (N.D.N.Y. Sept. 29, 2015) (Hurd, J.) (citing *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 778 (E.D. Tex. 2000)); *see also* Wright & Miller § 3854 ("Courts should refuse to take into account the possibility of a jury view unless the moving party has shown how a view of the locality of the events could be helpful.").

"merely shift some inconvenience from one party to the other" when attempting to support the transfer of a case. *See Abovepeer, Inc. v. Recording Indus. Ass'n of Am., Inc.*, 166 F. Supp. 2d 655, 650 (N.D.N.Y. 2001) (Kahn, J.). "The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 399 (S.D.N.Y. 2014).

Here, a transfer to the Middle District of Pennsylvania would clearly eliminate inconvenience for the defendants, as they would be defending all defective microwave-handle cases in one location. Plaintiff does not allege any inconvenience arising from the requested transfer other than the fact that he is an individual residing in the Northern District of New York and "transfer would compel him to travel and appear hundreds of miles from his home at great expense." Dkt. No. 34 at 16.

Despite ultimately transferring this case, the court in the *Kukich* Action was sympathetic to a similar argument, finding that the factor weighed against a transfer as inconvenience simply shifted from one party to the other. Dkt. No. 15-11 at 16. In the *Mendoza/Hunt* Action, the court stated that it was clear that the "Middle District of Pennsylvania was Plaintiffs' counsel's first choice of forum and, had Judge Brann not stricken

the 'Other States' subclass . . . Plaintiffs would have never filed . . . in . . .
California." Dkt. No. 15-17 at 10-11. However, the court there also
ultimately concluded that convenience weighed slightly against a transfer.
*Id.* at 11. For similar reasons, I find that, because there would be a shift in
inconvenience from defendants to plaintiff, however slight, if transfer is
ordered, this factor weighs in plaintiff's favor.[3]

　　　Turning to hardship, and relative means of the parties, although not
specifically addressed by the other courts, plaintiff here provides no
evidence of any financial hardship that may be experienced if the action
were to be transferred to the Middle District of Pennsylvania. Further,
plaintiff stated that since these actions commenced years ago, the parties
have only been to the Middle District of Pennsylvania once. Dkt. No. 34 at
13-14. Although defendants are corporations, and it is assumed
corporations are "better able to bear the expenses of litigating[,] . . . New
York would be no more ideal a forum for the remainder of the . . . class
members." *Horanzy v. Vemma Nutrition Co.*, 87 F. Supp. 3d 341, 350
(N.D.N.Y. 2015) (Hurd, J.). Therefore, although convenience weighs

---

[3]　　　When evaluating this factor I have also considered that plaintiff and his counsel
demonstrated a preference for litigating the action in the Middle District of
Pennsylvania, as part of the "other states" class, of which he would have been a
member, in the *Rice* Action.

slightly against transfer, the court takes into consideration that the

likelihood of plaintiff needing to be in the Middle District of Pennsylvania

frequently is slight.

### d.    Locus of Operative Facts

"The locus of operative facts is an important factor to be considered

in deciding where a case should be tried." *Horanzy*, 87 F. Supp. 3d at 349

(citing *Wilson v. DirectBuy, Inc.*, 821 F. Supp. 2d 510, 518 (D. Conn.

2011)). In making this determination, the court should look at where the

events from which the claim arose occurred. *Id.*

Plaintiff alleges that this factor favors the Northern District of New

York because this is where "the Microwave was purchased, where the

Lowe's representative sold Plaintiff his defective Microwave, and where

Plaintiff's Microwave handles becomes so hot as to present a significant

risk of harm to those who touch it." Dkt. No. 34 at 14. Defendants

respond, however, that the microwaves were not designed or

manufactured in New York or in Pennsylvania, and thus, this factor should

be rendered neutral. Dkt. No. 35 at 11.

The court agrees with defendants. This is, in its essence, a products

liability action centered upon the design of the subject Electrolux

microwaves. Not only was the allegedly defective product not designed or

manufactured in New York, but plaintiff is asserting this claim on behalf of himself and others similarly situated, who may or may not reside in the Northern District of New York. By the same token, the subject microwaves were not designed or manufactured in the Middle District of Pennsylvania either. Accordingly, I find that this factor is neutral regarding a transfer.

### e.   Familiarity with Governing Law

"'Federal courts are presumed to be equally familiar with federal law.' Likewise, 'federal courts are deemed capable of applying the substantive law of other states.'" *Horanzy*, 87 F. Supp. 3d at 350 (quoting *Wilson*, 821 F. Supp. 2d at 519; *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 251 (E.D.N.Y. 2010)). Accordingly, this court, as would any other federal court, including the Middle District of Pennsylvania, is fully capable of adequately overseeing this case. As such, this factor is also given no weight.

### f.   Plaintiff's Choice of Forum

"A plaintiff's choice of forum should not be disturbed unless the balance of several factors is strongly in favor of defendant." *View 360*, 2013 WL 998379, at *7 (internal quotation marks omitted). However, as a potential class action, the principle of affording more weight to plaintiff's choice of forum "is accorded less emphasis in a class action." *Andreas-*

*Moses v. Hartford Fire Ins. Co.*, No. 16-CV-1387, 2017 WL 5634709, at \*4
(N.D.N.Y. Oct. 30, 2017) (Peebles, J.) (citing *Tate-Small v. Saks*, No. 12-
CV-1008, 2012 WL 1957709, at \*4 (S.D.N.Y. May 31, 2012)). Moreover,
"the weight given to this factor may be diminished if the operative facts
have 'little or no connection' to the forum chosen by the plaintiff." *Horanzy*,
87 F. Supp. 3d at 346 (quoting *Rindfleisch*, 752 F. Supp. 2d at 251).

Here, plaintiff filed the present action in his home state of New York,
and contends that this weighs against the transfer to the Middle District of
Pennsylvania. Dkt. No. 34 at 9. As defendants argue, however, the
decision to file suit here was based on the fact that the New York
subclass was stricken from the complaint in the *Rice* Action (pending in
the Middle District of Pennsylvania), and should therefore be given little
weight. Dkt. No. 15-1 at 22.

As evidenced by plaintiff's memorandum, the filing in this district
was based upon his residence in this area, and the fact that the alleged
defective microwave is located in this district. Dkt. No. 34 at 9, 14. The
overarching facts of this case, however, are based on the alleged defect
caused by design or manufacturing and thus, the material facts bear little
direct connection to this forum, entitling plaintiff's choice to lesser weight.
*See Horanzy*, 87 F. Supp. 3d at 347 (finding the plaintiff's choice of forum

was entitled to minimal weight where a few New York sales, compared to a potential class, were insufficient to show the choice of forum deserved more than minimal weight). The court in the *Kukich* Action also deemed plaintiff's forum choice entitled to some, but not substantial, weight on the basis that although plaintiff resided in the forum, and purchased the allegedly defective microwave in Maryland, there were likely to be class members from other states represented by the class. *See Kukich*, 2017 WL 345856, at *7-8. Similarly, the court in the *Mendoza/Hunt* Action concluded that plaintiff's choice of forum was entitled to "more than minimal consideration[,]" weighing slightly against the transfer. Dkt. No. 15-17 at 12.

g.   Interests of Justice

Although the equipoise with respect to most of the relevant factors would ordinarily sustain plaintiff's forum choice, in the end, this case boils down to the interests of justice and efficiency, as embodied in section 1404(a) and Rule 1. Courts have "consistently recognize[d] that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy[.]" *Williams v. City of N.Y.*, No. 03 Civ. 5342, 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006); *see Goggins v. Alliance Capital Mgmt., L.P.*, 279 F. Supp. 2d 228, 234

(S.D.N.Y. 2003) ("The single most significant circumstance favoring transfer in this action is the existence of the related actions in [another district]."). Indeed, "[t]here is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968).

Defendants have clearly and convincingly demonstrated the efficiency in transferring this case to the Middle District of Pennsylvania. There are two similar cases currently pending in that court and some discovery in which factual and legal issues were explored, including the design and manufacture of microwave handles, the nature of the defect, and the extent of the defect.[4]  *See* Dkt. No. 15-1 at 19. Those same issues are in question in the case pending in this district.[5]  There is no need for the court here to handle discovery issues that have been

---

[4]      At oral argument, defendants acknowledged that in the absence of the pendency of the *Rice/Kukich* and *Mendoza/Hunt* Actions in the Middle District of Pennsylvania, there would be no reason to transfer this case to that forum.

[5]      During oral argument, plaintiff's counsel represented that defendants have been placed on notice of a forthcoming suit that will be filed in New Jersey that concerns similar or identical issues related to the design and manufacture of allegedly defective microwave handles.

pending, and have been handled, in the Middle District of Pennsylvania for nearly three years. As the court stated in the decision to transfer the *Mendoza/Hunt* Action, "the need to conserve judicial resources weighs heavily in favor of transfer." Dkt. No. 15-17 at 15. "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960); *see DISH Network, L.L.C. v. Am. Broad. Cos., Inc.*, No. 12 Civ. 4155 (LTS)(KNF), 2013 WL 1091318, at *3 (S.D.N.Y. Mar. 15, 2013). This would be an untenable result, and would directly contravene Rule 1 of the Federal Rules of Civil Procedure. Furthermore, defendants have demonstrated a willingness to consolidate the pending actions, which will further the court's ability to speed these cases along simultaneously. *See generally* Dkt. No. 35.

Plaintiff argues that defendants are not truly seeking to aid in efficiency through the requested transfer because Electrolux has opposed consolidation of the *Mendoza/Hunt* Action into the *Rice/Kukich* Action, arguing that each must proceed "on separate tracks." *Id.* at 18. This, however, mischaracterizes Electrolux's statements. Specifically Electrolux has represented that it would oppose consolidation "*if* the filing of that

[consolidated] complaint would moot the pending motion to dismiss . . . *or* would result in additional factual allegations or causes of action . . . by Rice and/or Kukich," Dkt. No. 34-4 at 2 (emphasis added), and "it may be the case that the most efficient way to move this litigation forward *is to consolidate* the actions for the purposes of discovery and allow motion practice . . . to progress on separate tracks." Dkt. No. 34-5 at 2 (emphasis added). Thus, Electrolux has never unconditionally opposed consolidation of these actions and has confined its concerns to how the pending motion to dismiss might be affected. This undermines plaintiff's contention that defendant's motion to transfer is "blatant forum shopping . . . without any intention of consolidating pleadings, remaining fact and expert discovery, and class certification proceedings for true efficiency." Dkt. No. 34 at 11.

At oral argument, plaintiff asserted that a transfer of this case to the Middle District of Pennsylvania would work against efficiency because the other cases would be stalled. I note that on February 20, 2018, District Judge Brann issued a memorandum on defendants' motion to dismiss, which was filed on April 14, 2017, in the *Rice/Kukich* Action. In addition, defendants filed a motion to dismiss in the *Mendoza/Hunt* Action on January 12, 2018, which is now ripe for the court's determination. Procedurally, these pending cases are at relatively the same, formative

stages of litigation, enabling the transferee court to easily and efficiently coordinate and facilitate the pretrial proceedings and discovery, including class certification, which has not yet been sought in the *Rice/Kukich* Action. Moreover, the Middle District of Pennsylvania will likely be able to more quickly and efficiently rule on defendants' inevitable motion to dismiss in this action, having already rendered one decision in connection with a substantially similar action.[6]

Importantly, I note that the pendency of similar cases in multiple districts creates the possibility of inconsistent rulings and causes multiple judges to review the same, or similar documents.[7] The cases currently pending in the Middle District of Pennsylvania are "virtually identical in all material respects" to each other and the lawsuit that is presently before the court. *See* Dkt. No. 15-11 at 19. The plaintiffs in those actions, all of whom

---

[6]    According to the Administrative Office of the United States Courts, for the twelve-month period ending December 31, 2017, the average time from a civil filing to disposition in the Northern District of New York is 10.8 months, as compared with 9.7 months in the Middle District of Pennsylvania. Similarly, the average time from a civil filing to trial in the Northern District of New York is 39.8 months, as compared with 34.5 months in the Middle District of Pennsylvania. Although this is a marginal difference, these statistics nonetheless lend additional support in favor of transfer. *Ward*, 133 F. Supp. 3d at 467; *see also Cruz v. Borgenicht*, No. 14-CV-00679 (DLI)(RER), 2014 WL 3696207, at *5 (E.D.N.Y. July 24, 2014) (considering same statistical data); *Excellent Home Care Servs., LLC v. FGA, Inc.*, No. 13 Civ. 05390 (ILG)(CLP), 2014 WL 652357, at *5 (E.D.N.Y. Feb. 19, 2014) (same).

[7]    As defendants note, the plaintiff in this action is a member of the putative nationwide declaratory/injunctive relief class in the *Rice* Action, and could therefore prevail there and lose here on the damage claim or vice versa.

are represented by the same set of attorneys, uniformly maintain that

microwaves designed or manufactured by Electrolux are equipped with

defective, stainless steel handles. There is no reason to burden two courts

with essentially the same claims and issues. Such repetitiveness is in

conflict with Rule 1 of Federal Rules of Civil Procedure which encourages

"the just, speedy, and inexpensive determination of every action and

proceeding." It would therefore be inconsistent with the goals of the

Federal Rules of Civil Procedure to deny defendants' requested transfer in

this case.

III.   <u>SUMMARY AND ORDER</u>

It is clear that this case could have been brought in the Middle

District of Pennsylvania. As such, the decision of whether to grant

defendants' motion turns on balancing the interests of justice and the

convenience of the parties and witnesses. Many of the relevant factors

informing the decision are neutral. The interest of efficiency in litigating

and the mandate of Rule 1 of the Federal Rules of Civil Procedure,

however, weigh strongly in favor of a transfer.

Accordingly, it is hereby

ORDERED that defendants' motion to transfer (Dkt. No. 15) is GRANTED, and the clerk of the court is respectfully directed to transfer this action to the United States District Court for the Middle District of Pennsylvania; and it is further

ORDERED that the clerk of the court serve a copy of this order upon the parties in accordance with this court's local rules.

Dated:     March 6, 2018
           Syracuse, New York

David E. Peebles
U.S. Magistrate Judge